IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PATRICIA BRONSKY,** <br><br> **Plaintiff,** <br><br> v. <br><br> **CARDINAL VILLAGE, INC., SUSAN WIEST, and KIERSTON JEFFERSON** <br><br><br> **Defendant.** | Civil Action No. <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Patricia Bronsky ("Plaintiff" or "Ms. Bronsky") by and through her attorneys, Sobol Law Group, P.C., hereby brings this civil matter against Cardinal Village, Inc. ("Defendant Cardinal" or "Corporate Defendant"), Susan Wiest ("Defendant Wiest"), and Keirston Jefferson ("Defendant Jefferson") (together "Defendants"). In support thereof, Plaintiff alleges the following:

## INTRODUCTORY STATEMENT

1. Plaintiff has initiated the instant action to redress violations by Defendants of the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq*.

2. The ADAAA is a remedial statute intended to address and remedy Congress's findings that discrimination against persons with physical and mental disabilities persist in critical areas such as employment and further the Nation's goal of assuring equality of opportunity for individuals with disabilities. 42 U.S.C. § 12101(a)(1)-(8). The provisions of the NJLAD that

1

prohibit employment discrimination serve the same function.

## JURISDICTION AND VENUE

3. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under the laws of the United States—more specifically the ADAAA. This Court has supplemental jurisdiction over Plaintiff's NJLAD claims because those claims arise out of the same nucleus of operative fact as Plaintiff's ADAAA claims, such that it forms part of the same case or controversy.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business in this judicial district and the acts complained of took place in this judicial district.

6. Plaintiff dual-filed a Charge of Discrimination with the New Jersey Division on Civil Rights (NJDCR) and the Equal Employment Opportunity Commission (EEOC) on June 9, 2022.

7. The EEOC issued a Notice of Right to Sue on January 24, 2023.

8. The Complaint is timely in that it was filed within ninety (90) days of the issuance of the Notice of Right to Sue.

## THE PARTIES

9. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

10. At all times material to this action, Plaintiff was, and continues to be, a resident of Atco, New Jersey.

11. At all times material to this action, Defendant Cardinal was, and continues to be, a New Jersey corporation operating and engaging in business in New Jersey, doing business in Sewell, New Jersey.

12. At all times material to this action, Defendant Wiest was employed by Defendant Cardinal as Executive Director.

13. At all times material to this action, Defendant Jefferson was employed by Defendant Cardinal as Assisted Living Executive Director.

14. From approximately March 2008, until her termination on or about May 13, 2022, Plaintiff was an "employee" of Defendant Cardinal within the meaning of the ADAAA and the NJLAD.

15. At all times material to this action, Defendant Cardinal was an "employer" within the meaning of the ADAAA and the NJLAD.

16. At all times material to this action, Plaintiff had and was perceived as having a disability as defined by 42 U.S.C. § 12102(1)-(2) that substantially limits one or more major life activities, including major bodily functions. Specifically, Plaintiff had and was perceived as having COVID-19 and Long COVID.

17. At all times material to this action, Plaintiff was a "qualified individual" under the ADAAA in that she is/was a person who can perform the essential functions of her position, with or without reasonable accommodation.

18. At all times material to this action, Plaintiff had and was perceived as having a disability as defined by N.J.S.A. 10:5-5(q) in that she had a physical or sensory disability caused by illness. Specifically, Plaintiff had and was perceived as having COVID-19 and Long COVID.

19. At all times material to this action, Plaintiff was an employee entitled to be free

from discrimination on the basis of disability and perceived disability under the ADAAA and the NJLAD.

## FACTUAL ALLEGATIONS

20.   In March 2008, Defendant Cardinal hired Plaintiff as its Director of Nursing.

21.   For fifteen years, Plaintiff received glowing performance reviews and routinely received an annual four-percent merit salary increase on her anniversary date of hire.

22.   Plaintiff's supervisors regularly lauded her for going out of her way to make staff feel appreciated, displaying a sense of urgency in completing assessments, and proactively communicating with residents when necessary.

23.   On or about August 30, 2021, Plaintiff tested positive for COVID-19 while at work.

24.   Prior to her positive test for COVID-19, Defendant had never disciplined Plaintiff.

25.   Notwithstanding the debilitating impact COVID-19 had on her, under Plaintiff's leadership, Defendant Cardinal achieved a perfect survey from the New Jersey Department of Health in September 2021.

26.   Even after Plaintiff's COVID-19 condition had seemingly run its course and she tested negative for the virus, Plaintiff continued to feel fatigued and experienced a rapid depletion of energy in the ensuing months.

27.   In the midst of Plaintiff's struggles with these symptoms, on October 12, Defendant Wiest and Defendant Jefferson, among other members of management, held a counseling conference with Plaintiff in which they "discussed how [Plaintiff] had not been herself lately" and criticized her work performance.

28.   During this counseling conference, Plaintiff advised Defendants of her symptoms, as well as her difficulty sleeping and increased blood sugar levels.

29. Plaintiff continued to suffer through bouts of these symptoms through the remainder of 2021 and into 2022.

30. On or about March 9, 2022, Defendant Wiest issued a Performance Improvement Plan ("PIP"), in which she attributed Plaintiff's supposed performance deficiencies to her "feelings of being tired."

31. As part of the PIP, Defendant Wiest presented Plaintiff with an "Action Plan" that laid out a five-item agenda designed to bring her performance up to acceptable standards—an agenda devoid of examples illustrating Plaintiff's supposed unacceptable performance or any semblance of constructive feedback.

32. Plagued by continued health difficulties, Plaintiff gamely tried to correct what Defendant Wiest deemed as Plaintiff's unacceptable performance as laid out in the PIP, even though she vehemently disagreed with the PIP.

33. On or about April 1, 2022, Defendant Wiest and Defendant Jefferson met with Plaintiff and baselessly accused her of being impaired while on the job after they noticed a marked decline in her energy level.

34. Confronted by such shocking allegations, Plaintiff explained to Defendant Wiest and Defendant Jefferson that the after-effects of COVID-19 had wiped her out and she was having problems sleeping at night in the wake of reviewing a PIP so harshly critical of her performance, even though Plaintiff believed the PIP had no basis in fact.

35. Defendant Jefferson even asked Plaintiff's aides if they believed Plaintiff was drinking or using drugs while on the job.

36. Plaintiff's aides responded that they had never observed anything in Plaintiff's behavior to support this outrageous accusation and speculated that her recovery from COVID-19

and the long hours she had been working may have caused the noticeable decline in her energy level.

37. On or about April 7, 2022, a doctor diagnosed Plaintiff with Long COVID.

38. Plaintiff communicated her diagnosis to Defendant Wiest on or around April 11, 2022.

39. That same day, Defendant Wiest issued a "30 Day Action Plan" to Plaintiff, which generally repeated the agenda items from the PIP and again did not cite any examples of Plaintiff's supposed performance deficiencies or otherwise provide constructive feedback.

40. When Defendant Wiest issued this most recent discipline to Plaintiff, Plaintiff addressed her Long COVID diagnosis and advised that her condition may necessitate her taking occasional PTO days when her episodic symptoms became particularly unbearable.

41. Although Plaintiff continued to soldier on in spite of her constant feelings of fatigue, her unrelenting symptoms indeed necessitated her use of PTO days.

42. On or about April 19, 2022, Defendant Wiest and Defendant Jefferson disciplined Plaintiff for allegedly taking an excessive number of PTO days, even though she had banked sufficient PTO for precisely this use.

43. When Plaintiff asked whether she should take an extended medical leave to address her disabling condition so as not to incur further discipline by taking more PTO days, Defendant Wiest and Defendant Jefferson responded that they did not want Plaintiff to take medical leave.

44. In doing so, Defendant Wiest and Defendant Jefferson effectively denied Plaintiff's request for a reasonable accommodation without engaging in an interactive process.

45. Over the next month, when Plaintiff tried to address the areas in which Defendant Wiest claimed she needed to improve, Defendant Wiest found new criticisms of Plaintiff's

performance, effectively moving the goal posts and making it impossible for her to achieve success by way of the 30 Day Action Plan.

46. Defendants' actions had made clear to Plaintiff their desire to rid themselves of Plaintiff based on her disabling condition.

47. On or about May 13, 2022, Defendants terminated Plaintiff's employment.

## COUNT I
### Unlawful Discrimination in Violation of the ADAAA

48. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

49. Plaintiff is a qualified individual under the ADAAA.

50. Defendant Cardinal is an employer within the meaning of the ADAAA.

51. Plaintiff disclosed her medical condition, which is a condition that constitutes a disability/perceived disability under the ADAAA, to Defendants.

52. With actual knowledge of Plaintiff's medical condition, Defendants terminated Plaintiff's employment due to her disability and their perception of Plaintiff as a person with a disability within the meaning of the ADAAA.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems equitable and just.

## COUNT II
### Failure to Accommodate in Violation of the ADAAA

53. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length

herein.

54. Plaintiff made a request for a reasonable accommodation based on her disability/perceived disability.

55. Defendants failed to engage in an interactive process when Plaintiff requested a reasonable accommodation based on her disability/perceived disability.

56. Defendants ultimately failed to reasonably accommodate Plaintiff's disability/perceived disability and terminated her instead.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems equitable and just.

## COUNT III
## Unlawful Retaliation in Violation of the ADAAA

57. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

58. Plaintiff engaged in protected activity when she made a request for a reasonable accommodation based on her disability/perceived disability.

59. As a result of Plaintiff engaging in that protected activity, Defendants terminated Plaintiff's employment in violation of the ADAAA.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems

equitable and just.

## COUNT IV
### Unlawful Discrimination in Violation of the NJLAD

60. Plaintiff suffered from a medical condition recognized as a disability under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq*.

61. Plaintiff disclosed her medical condition to Defendants.

62. With actual knowledge of Plaintiff's medical condition, Defendants terminated Plaintiff based on her disability and their perception of Plaintiff as a person with a disability in violation of the NJLAD.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems equitable and just.

## COUNT V
### Failure to Accommodate in Violation of the NJLAD

63. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64. Plaintiff made a request for a reasonable accommodation based on her disability/perceived disability.

65. Defendants failed to engage in an interactive process when Plaintiff requested a reasonable accommodation based on her disability/perceived disability.

66. Defendants ultimately failed to reasonably accommodate Plaintiff's disability/perceived disability and terminated her instead.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems equitable and just.

## COUNT VI
## Unlawful Retaliation in Violation of the NJLAD

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Plaintiff engaged in protected activity when she made a request for a reasonable accommodation based on her disability/perceived disability.

69. As a result of Plaintiff engaging in that protected activity, Defendants terminated Plaintiff's employment in violation of the NJLAD.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages for pain, suffering and emotional distress, punitive damages, interest, costs of suit, attorneys' fees and litigation expenses, equitable back pay, equitable front pay, and any other relief this Court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

*David M. Eisen*

David M. Eisen, Esquire (Bar ID 167432015)
**Sobol Law Group, P.C.**
1845 Walnut Street, 23rd Floor
Philadelphia, PA 19103
Tel.   (215) 988-0100
Fax   (215) 988-0193
deisen@sobollaw.com

Counsel for Plaintiff,
Patricia Bronsky

DATED:   April 24, 2023

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, digital images, computer images, cache memory, searchable data, emails, spreadsheets, employment files, memos, text messages, any and all social media or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, TikTok, etc.) and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.